**In re Harold Lloyd FROST, Catherine Charlotte Frost, Debtors.**

**Bankruptcy No. 2–87–02556.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 10, 1989.

Samuel L. Calig, Calig and Handelman, Columbus, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, trustee.

Gilbert L. Krone, Columbus, Ohio, for Atlantic Financial.

## ORDER ON APPLICATION TO MODIFY PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the motion of debtors Harold and Catherine Frost, seeking to modify their Chapter 13 plan. The proposed modification was opposed by Atlantic Financial Federal ("Atlantic") and was heard by the Court.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (L).

The debtors filed a Chapter 13 petition and plan with this Court on June 10, 1987. The Court confirmed the debtors' plan on August 31, 1987. As confirmed the plan provided for payment in full of allowed secured and priority unsecured claims and a dividend of 70% to allowed general unsecured claims. The plan further provided that pre-petition arrearages owed to Atlantic on a note secured by a first mortgage against the debtors' residential real property were to be paid through the Chapter 13 trustee. Current monthly payments were to be made directly to Atlantic. Subsequent to confirmation, the debtors modified their plan and included the current ongoing payments to Atlantic as an obligation paid by the Chapter 13 trustee.

The modification now before the Court reduces the dividend to unsecured claims and further modifies the treatment of the debtors' obligation to Atlantic. The modification restructures the mortgage loan and bifurcates Atlantic's claim pursuant to 11 U.S.C. § 506(a). The proposed modification provides for a secured claim to the extent value exists in the real property and for an unsecured claim for the balance of the obligation. Consistent with that proposal, the plan will pay Atlantic's allowed secured claim in full during the term of the plan and will offer a 5% dividend to all allowed general unsecured claims, including Atlantic's unsecured claim. Modification was necessitated by recent assertion against the debtors of a significant obligation co-signed by Mr. Frost.

The only factual issue to be determined by the Court is the value of the real property. An appraisal submitted by the debtors on August 20, 1987 in support of confirmation indicated a market value for the residence of $20,500. The parties are in agreement that Atlantic is owed approximately $34,000. Given this appraisal, the debtors now propose to pay $20,500 to Atlantic as an allowed secured claim along with a discount factor equal to the contract rate of interest of 13.25% and to pay a dividend of 5% on the remainder of the obligation to Atlantic as an allowed unsecured claim. Atlantic is opposed to the proposed modification not only because it believes the value of the real property to be in excess of $20,500, but also because it asserts that the debtors' proposal is prohibited by the provisions of 11 U.S.C. § 1322(b)(2).

The Court has decided not to consider the appraisal previously filed on behalf of the debtors as evidence of the property's value. Such appraisal was not relevant to the treatment of Atlantic's interest as proposed at confirmation and Atlantic would not have had sufficient reason to challenge that appraisal at the earlier date. Further, no witness appeared to support the conclusions reached in that appraisal.

At the hearing on the proposed modification, Harold Frost testified as to value of the real property. Mr. Frost stated that, in his opinion, the property was worth in the "low twenty thousands." No other witnesses testified. Atlantic asked for a continuance of the hearing so that it could engage an expert to testify to a higher value for the property, however the debtors opposed that continuance citing its economic impact. Because the debtors' motion clearly identified the amount of Atlantic's

secured claim as an issue and Atlantic was aware that valuation was an issue, the Court denied the continuance.

Based upon the testimony of Mr. Frost, the Court finds that the debtors' real property should be valued at $23,000. Given the 10% costs of sale figure normally used to reduce an appraised value to an amount which represents a first lienholder's interest in that collateral, the $20,500 secured claim suggested by the debtor is within a few hundred dollars of the appropriate amount of Atlantic's secured claim pursuant to 11 U.S.C. § 506(a). See *In re Marx*, 11 B.R. 819 (Bankr.S.D.Ohio 1981).

In the case at bar, the Court is presented with two legal issues. First, whether the debtors may treat Atlantic's claim in the manner proposed under the provisions of Chapter 13. And second, whether the contemplated alteration of the treatment of Atlantic's claim is appropriately presented as a modification.

■ The first dispute focuses on the language of 11 U.S.C. § 506(a) and § 1322(b)(2). More precisely, this Court is required to determine whether the proscription in Chapter 13 against modification of a claim, secured only by a security interest in real property which is a debtor's principal residence, extends only to a secured claim allowed pursuant to § 506(a) or includes the total amount of the debtors' obligation to the creditor regardless of the value of the real property which serves as security for that obligation.

Section 1322(b)(2) of Title 11 United States Code states in relevant part:

"(b) ... the plan may

   .    .    .    .    .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ..."

That subsection has been the source of much judicial discussion since first enacted on November 6, 1978 and first applied to cases filed on or after October 1, 1979. See e.g. *In re Hobaica*, 65 B.R. 693 (Bankr. N.D.N.Y.1986); *In re Neal*, 10 B.R. 535 (Bankr.S.D.Ohio 1981); and *In re Simpkins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982).

The language which finally appeared as the second clause of § 1322(b)(2) was inserted in the final compromise bill leading to the Bankruptcy Reform Act. *Neal*, 10 B.R. at 536, 539. The impetus for inclusion of that exception to the modification power, applicable only to claims secured "wholly" or "only" by mortgages against a debtor's residence, apparently came from the long-term purchase money mortgage industry. Those lenders sought to codify a policy protecting the stability of such loans by preserving intact all contractual terms of those obligations during the Chapter 13 process with a limited exception for curing arrearages in § 1322(b)(5). (Compare S. 2266, 95th Cong.2d Sess. § 1322(b)(2) (1978) with 11 U.S.C. § 1322(b)(2)); *Simpkins*, 16 B.R. at 963. The language as enacted, however, does not reflect any such limitation in its scope.

This Court has previously determined that § 1322(b)(2) applies to any allowed secured claim held by a claimant whose only security interest is in the debtors' principal residence. The protection afforded by § 1322(b)(2) is not limited to the holder of a purchase money first mortgage. *In re Allen*, 75 B.R. 344 (Bankr.S.D.Ohio 1987). However, whether such protection extends to any claim of the creditor arising from the transaction for which the security interest was granted, or whether it extends only to the creditor's allowed secured claim has not been previously determined. As expected, two lines of cases have developed.

Section 506(a) of the Bankruptcy Code limits an allowed secured claim to the value of the creditor's interest in the estate's interest in property subject to the creditor's lien. To the extent the creditor is owed an amount in excess of the value of the property, minus appropriate costs of sale and prior lien interests, that creditor has only an allowed unsecured claim for such excess. The question before the Court in this matter is whether the protection for long-term residential mortgages, codified by 11 U.S.C. § 1322(b)(2), requires the Court to ignore the provisions of § 506(a) where the

residence has a value less than the mortgage debt, or whether § 1322(b)(2) is merely a specific provision which is subject to another provision of the Bankruptcy Code, such as § 506(a) which applies in cases filed under all chapters. See 11 U.S.C. § 103(a).

The Court has reviewed other court decisions on this issue and agrees with those opinions which hold that § 506(a) and § 1322(b)(2) must be interpreted in a complementary manner. A claim must be allowable as a secured claim pursuant to § 506(a) before it may be protected under § 1322(b)(2) as a "claim secured only by a security interest in real property that is the debtors' principal residence." See *Caster v. U.S. of America (In re Caster)*, 77 B.R. 8 (Bankr.E.D.Pa.1987), *In re Neal*, 10 B.R. 535 (Bankr.S.D.Ohio 1981); and *In re Simmons*, 78 B.R. 300 (Bankr.D.Kan.1987). Further, the only controlling opinion in this district does not change this result as its holding is limited to treatment of the claim of a fully secured mortgagee. *In re Bradshaw*, 56 B.R. 742 (S.D.Ohio 1985). The secured claim protected by § 1322(b)(2) is determined only after application of the principles of § 506(a). If the meaning of "secured claims" in the first phrase of § 1322(b)(2) were different from the meaning of "claim secured" in the second portion of § 1322(b)(2), surely Congress would have indicated such a distinction by the insertion of necessary qualifiers. The Court believes the two phrases express identical legal concepts: a claim allowed as secured after application of the principles of § 506(a).

This interpretation of § 1322(b)(2) does not unacceptably undercut the Congressional policy of protecting long-term mortgage-backed obligations. The mortgagee certainly has within its control the ratio of collateral value to loan amount which it will approve when it agrees to extend a loan. Normally the lending institution selects the appraiser to establish the property's value. Absent intentional depreciation by a debtor or very abnormal economic times, most holders of first mortgages should be fully secured and, therefore, within the protection of § 1322(b)(2). If their obligations are not so protected, a Chapter 13 debtor

may modify the creditor's claim to the extent of the undersecurity. The creditor's allowed secured claim, however, must be paid in full with the contract rate of interest unless the claimant agrees to a different treatment. Such treatment satisfies the requirements of 11 U.S.C. § 1325(a)(5).

The final matter for determination is whether the treatment proposed for Atlantic's claim, although within the confirmation standards of Chapter 13, is appropriately the subject of a proposed modification one and one-half years after confirmation.

Modification of a confirmed Chapter 13 plan by a debtor is governed by the provisions of 11 U.S.C. § 1329. In particular, § 1329(b) requires the modification to satisfy all tests for confirmation in § 1322(a) and (b), § 1323 and § 1325(a). Section 1329(c) limits the total length of such a plan to 36 months from the date of the first payment under the original plan or 60 months upon a showing of cause. Both such requirements have been met by the Frosts' proposed modification. However, additional substantive requirements for modifying a Chapter 13 plan are set forth in § 1329(a), which states:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

The focus of the Frosts' proposed modification is § 1329(a)(1). Does the scope of § 1329(a)(1) include change in the treatment of Atlantic's claim from nonimpairment and nondischargeability pursuant to 11 U.S.C. § 1322(b)(5) to bifurcation into secured and unsecured claims with even-

tual discharge of 95% of the unsecured claim pursuant to §§ 1322(b)(2) and 1325(a)(5)?

There exists a limited amount of case law discussing a debtor's proposed modification of a Chapter 13 plan which reclassifies a creditor's claim. At least one court disapproved such a modification under the former Bankruptcy Rules where it appeared that the modification attempted to unfairly penalize a secured creditor which had relied upon direct payment by the debtor and therefore had not filed a timely proof of claim. *See In re Rush,* 6 B.C.D. 139 (Bankr.S.D.Fla.1980). Likewise, at least one court, under general principles of *res judicata,* denied a debtor's attempt to decrease a creditor's previously allowed secured claim because of post-confirmation relief from stay which returned the collateral to the creditor for disposition. *In the Matter of Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga.1984).

This Court agrees that principles of *res judicata* generally operate to foreclose relitigation of matters more properly raised prior to confirmation of a plan. However, this Court also believes § 1329 creates an exception to the general rule. The exception should be narrowly construed to avoid relitigation of all matters except those used unfairly against the party affected by the proposed modification. For example, if a party had no reason at confirmation to contest such issues as value or good faith because the treatment proposed was essentially nonimpairment, then a subsequent proposal seeking to adversely modify that party's claim must permit the affected party to contest those issues. The contest is not to reopen or change rights established by the original confirmation order, but to address the propriety of the proposed modification as it affects the party's claim. Therefore, the Court finds that the doctrine of *res judicata* does not bar consideration of issues relevant to the modification which were not necessary to determine Atlantic's status at confirmation.

If § 1329(a)(1) were read literally, the Court could find that authorization to "increase or reduce the amount of payments on claims of a particular class provided for by the plan" may not encompass a reclassification. Conversely, it could be argued that by reducing to zero the payments to the class treated under § 1325(a)(5) and by adding another member to the class treated pursuant to § 1322(b)(2), the proposed treatment is within the statutory language. The language should be read as a guide to the policy sought to be implemented.

The Court believes the policy supporting post-confirmation modification of a plan permits a plan to accommodate changed circumstances so long as the modified plan would have been appropriate had the present circumstances existed originally. That policy is best implemented by interpreting § 1329(a) broadly, absent bad faith or unfair prejudice. Thus, the debtors' proposal is within the intended scope of the statute. To hold otherwise would encourage a debtor to propose originally only the least favorable treatment for a claim since he could not later alter that treatment if he could not complete his plan as originally proposed. Such an approach promotes the wrong result.

Based upon the foregoing, the Court finds that the debtors' proposed modification is acceptable within the meaning of 11 U.S.C. § 1329. The modification is necessary to accommodate the debtors' changed financial position, meets the requirements of 11 U.S.C. § 1329 and is permissible pursuant to § 1322(b)(2). Accordingly, Atlantic's opposition to the proposed modification is overruled and the debtors' application to modify their plan is sustained. Because the value ascribed to the real property may require slight changes in the proposed plan, the debtors are given twenty (20) days to amend their plan further to reflect the terms of this order.

IT IS SO ORDERED.