**In re Robert L. TAYLOR and Robin A. Taylor, Debtors.**

**Bankruptcy No. 88–81168.**

United States Bankruptcy Court, C.D. Illinois.

May 24, 1989.

Michael A. Williams, Rock Island, Ill., for debtors.

Frank J. Galvin, Rock Island, Ill., for Credithrift.

U.S. Trustee, Peoria, Ill.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER,
Bankruptcy Judge.

In 1986 the Debtors filed a Chapter 13 proceeding which was subsequently converted to a Chapter 7 proceeding where the Debtors obtained a discharge. On June 7, 1988, the Debtors filed a Chapter 13 proceeding. Under their original Plan, Beneficial Finance (BENEFICIAL) and Credithrift of America, Inc. (CREDITHRIFT), holders of unsecured cosigned claims, were classified along with other secured creditors who were to be paid prior to any unsecured creditors, with unsecured creditors to receive 100%. On July 20, 1988, the Debtors filed a Modified Plan, which deleted both BENEFICIAL and CREDITHRIFT from the secured classification, made no mention of either creditor, and provided unsecured creditors were to be paid 0%. The estimated length of the plan was thirty-six months. On August 5, 1988, CREDITHRIFT filed a Petition to remove the automatic stay so as to permit it to proceed against the cosigners. On October 29, 1988, an order was entered finding that the Debtors had not filed any response to the Petition and that the Debtors' Plan did not propose to pay CREDITHRIFT, and ordered a removal of the automatic stay so that CREDITHRIFT could proceed against the cosigners. On November 17, 1988, a second Modified Plan was filed. Again, there was no mention of either CREDITHRIFT or BENEFICIAL, and after payments to the secured class and an unsecured creditor whose debt would be nondischargeable in a Chapter 7 case, remaining unsecured creditors were to be paid 0%. This was a sixty-month plan. On December 7, 1988, the Second Modified Plan was confirmed. Finally, on March 1, 1989, the Debtors filed yet another Modified Plan which classified both the claims of BENEFICIAL and CREDITHRIFT as part of the secured class, with their claims to be concurrently paid with the secured claims. Unsecured creditors are to be paid 100% and the estimated length of the plan is sixty months. CREDITHRIFT objected on the basis that the automatic stay has been removed and it is receiving payment from the cosigners. BENEFICIAL did not object. Although not stated in these exact terms, what the Debtors are attempting to do, is to reinstate the automatic stay and to pay the claims of CREDITHRIFT and BENEFICIAL through the Plan so the cosigners will not be required to pay. Several sections of the Bankruptcy Code must be considered. The first section is Section 1329(a) which provides in part as follows:

> Section 1329. Modification of plan after confirmation.
>
> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

11 U.S.C. Section 1329.[1] Section 1329 permits modification as to classes of creditors, not as to individual creditors. The Debtors' pending Modified Plan does not deal with a class of creditors, but rather with two individual creditors who were not separately classified under the terms of the confirmed plan, and thus, are members of the unsecured class of creditors.[2] In short, what the Debtors are attempting to do is to reclassify the claims of BENEFICIAL and CREDITHRIFT as unsecured, cosigned debts to be paid 100%, along with the secured creditors. The Debtors' proposed modification is not within the literal word-

---

1. Subsections (2) and (3) of Section 1329(a) are not applicable.

2. Both BENEFICIAL and CREDITHRIFT were listed on Schedule A–3 filed by the Debtors, as creditors having unsecured claims. While the Bankruptcy Code specifically provides that a debtor may separately classify unsecured, cosigned debts, such classification is not mandatory. Here, the Debtors' plan did not so provide, and accordingly, BENEFICIAL and CREDITHRIFT remain members of the unsecured class of creditors.

ing of the Code. As one commentator has noted, "Section 1329 does not authorize the debtor to designate classes of claims different from the classifications defined by the confirmed plan." 5 *Collier on Bankruptcy,* par. 1329.01[2][a]. Some courts have given a restrictive interpretation to Section 1329, holding that reclassification of a claim is not permitted after confirmation of a plan. *Matter of Abercrombie,* 39 B.R. 178 (Bkrtcy.N.D.Ga.1984).

Other courts have attributed a broader scope to Section 1329. In *In re Frost,* 96 B.R. 804 (Bkrtcy.S.D.Ohio 1989), the debtors proposed to modify the fully secured claim of a creditor into secured and unsecured components. In concluding that the modification was permissible, the court stated:

If Section 1329(a)(1) were read literally, the Court could find that authorization to "increase or reduce the amount of payments on claims of a particular class provided for by the plan" may not encompass a reclassification. Conversely, it could be argued that by reducing to zero the payments to the class treated under Section 1325(a)(5) and by adding another member to the class treated pursuant to Section 1322(b)(2), the proposed treatment is within the statutory language. The language should be read as a guide to the policy sought to be implemented.

The Court believes the policy supporting post-confirmation modification of a plan permits a plan to accommodate changed circumstances so long as the modified plan would have been appropriate had the present circumstances existed originally. That policy is best implemented by interpreting Section 1329(a) broadly, absent bad faith or unfair prejudice. Thus, the debtors' proposal is within the intended scope of the statute. To hold otherwise would encourage a debtor to propose originally only the least favorable treatment for a claim since he could not later alter that treatment if he could not complete his plan as originally proposed. Such an approach promotes the wrong result.

In a somewhat similar fashion, the Court in *In re Jock,* 95 B.R. 75 (Bkrtcy.M.D.Tenn.

1989), allowed the debtor to surrender collateral to a secured creditor and pay the deficiency as an unsecured claim. Noting that each secured claim in a Chapter 13 case is separately classified, the court stated that the debtor's proposal to return the collateral in full satisfaction of the secured claim was within the meaning of Section 1329(a)(1) as it would "reduce the amount of payment on claims of a particular class provided for by the plan." The court then determined that the proposed modification was authorized by Section 1329, stating:

11 U.S.C.S. Sections 1329(b) and (c) fix the statutory limits on modifications of Chapter 13 plans after confirmation. The mandatory and permissive provisions of a Chapter 13 plan found in 11 U.S.C.S. Sections 1322(a) and (b)(1987) and the confirmation requirements of 11 U.S.C.S. Section 1325(a)(1987) "apply to any modification under subsection (a) of this section." 11 U.S.C.S. Section 1329(b)(1). A Chapter 13 debtor can use the permitted plan provisions described in Section 1322(b), subject to the confirmation requirements of Section 1325(a), to modify a confirmed Chapter 13 plan under Section 1329(a).

Section 1322(b)(8) permits a Chapter 13 debtor to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C.S. Section 1322(b)(8). Section 1325(a)(5)(C) permits a Chapter 13 debtor to satisfy an "allowed secured claim provided for by the plan" by surrendering the property securing the claim. 11 U.S.C.S. Section 1325(a)(5)(C). This Chapter 13 debtor could have satisfied the secured claim of [the creditor] by surrendering the car to the bank at confirmation of the original plan in February of 1988. The incorporation of Sections 1322(b)(8) and 1325(a)(5)(C) into the standards for post-confirmation modification in Section 1329 empower this Chapter 13 debtor to modify the confirmed plan to surrender the car in satisfaction of [the creditor's] secured claim.

This Court declines to adopt such an expansive approach to Section 1329, as taken

by the courts in *Frost* and *Jock.* The language of Section 1329(a)(1) is plain. A confirmed plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. Section 1329(a)(1). In this Court's view, it is only when a proposed modification complies with Section 1329(a)(1), that reference must be made to Section 1329(b)(1), in order to determine if the plan as modified conforms to the requirements of Sections 1322(a) and (b), which define mandatory and permissive plan contents, as well as the requirements for confirmation contained in Section 1325(a). A debtor cannot bootstrap Section 1329(b)(1) to enlarge the modifications permitted by Section 1329(a).[3]

Thus, a debtor cannot change the basic structure of a confirmed Chapter 13 plan mid-way through completion. The reclassification proposed by the Debtors here is not permissible. This Court is reluctant, however, to say that a reclassification of claims may never be permitted under Section 1329, for there may be circumstances where such would be a proper modification. But even if this Court determined that the Debtors' proposed modification fell within Section 1329, it would still be denied. As the Court noted in *Frost*, Section 1329 will be broadly interpreted only in the absence of unfair prejudice. As later discussed, CREDITHRIFT has obtained relief from the stay and has made arrangements for payment with the cosigners. Allowing the Debtors' proposed modification would be unfairly prejudicial, given the Debtors' troubled track record in this Court.

Furthermore, the impact of 11 U.S.C. Section 1327 must be considered. Under Section 1327, the effect of confirmation is to bind the debtor and each creditor. As noted by the court in *Frost, supra*, Section 1329, providing for post-confirmation modification, creates an exception to Section 1327. Post-confirmation modification is only warranted, however, when an unanticipated change in circumstances affects the implementation of the plan as confirmed. *Matter of Grogg Farms, Inc.*, 91 B.R. 482 (Bkrtcy.N.D.Ind.1988). As to all other matters which were raised or could have been raised, the order of confirmation is *res judicata.* A creditor, barred under the terms of a confirmed plan from exercising its rights against a co-debtor, may not seek post-confirmation relief to pursue that co-debtor. *In re Bonanno*, 78 B.R. 52 (Bkrtcy.E.D.Pa.1987). It would follow that a debtor cannot defeat a creditor's right to pursue the co-debtors by a post-confirmation modification. Moreover, there appears to be little here in the way of changed circumstances. It is true that this most recent modification involves an increase in bi-monthly payments, but it does not appear from the record if this is the result of a real improvement in the Debtors' situation or mere belt-tightening or budget manipulation. Rather, what has changed throughout this case is the Debtors' desire to pay what to whom.

The final consideration involves the effect to be given to the removal of the automatic stay so that CREDITHRIFT could proceed against the cosigners. Once removed, can it be reinstated? The automatic stay originally issued pursuant to 11 U.S.C. Section 1301. There is no statutory authority in the Bankruptcy Code to reinstate an automatic stay once the stay has been lifted. *Matter of Terramar Min. Corp.*, 70 B.R. 875, 877 (Bkrtcy.M.D.Fla. 1987). However, a court may, on proper application, grant injunctive relief in extraordinary situations pursuant to Section 105 of the Bankruptcy Code. *Matter of Terramar Min. Corp., supra*, and *In re McNeely*, 51 B.R. 816, 821 (Bkrtcy.D.Utah 1985). In the case before this Court, there are no extraordinary circumstances which would justify the reinstating of the stay pursuant to Section 105. It is clear that after filing a Chapter 7 proceeding the Debtors encountered more financial difficulties and within an approximate two year period they filed a Chapter 13 proceeding, where they were having difficulty propos-

---

**3.** This Court disagrees with the result reached by the court in *Jock, supra.* While the proposed modification in that case reduced the claim of a secured creditor, as discussed by the court, it also *added* a claim to the class of unsecured creditors, a modification which this Court does not believe is permitted by Section 1329(a).

ing a confirmable Chapter 13 Plan. To obtain that goal they purposely omitted CREDITHRIFT from their Plan and permitted the automatic stay to be lifted so that CREDITHRIFT could proceed against the cosigners. The fact that the Debtors believe they are now in a position to pay CREDITHRIFT does not present extraordinary circumstances that would justify the reinstatement of the automatic stay. Their belief is not supported by their previous actions. CREDITHRIFT should not be subjected to the possibility of again having to seek the lifting of the automatic stay so as to be able to proceed against the cosigners. This result does not present any hardship to the Debtors or the cosigners because from a practical point of view the money that the Debtors want to pay through the Plan can be paid directly to the cosigners and channeled on to CREDITHRIFT.

IT IS, THEREFORE, ORDERED that the Debtors' request to modify their confirmed Chapter 13 Plan be, and the same is hereby DENIED.