**In re Harold Lloyd FROST, Catherine Frost, Debtors.**

**Appeal of ATLANTIC FINANCIAL FEDERAL, Appellant.**

No. C-2-89-246.

United States District Court, S.D. Ohio, E.D.

Nov. 5, 1990.

Gilbert Lawrence Krone, Columbus, Ohio, for appellant.

Samuel Lee Calig, Calig & Handelman, Columbus, Ohio, for appellee.

Frank Pees, Worthington, Ohio, pro se.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This appeal arises from the Chapter 13 proceeding of debtors Harold and Catherine Frost. The debtors' Chapter 13 plan was confirmed on August 31, 1987. However, the debtors subsequently sought to modify their Chapter 13 plan so as to reclassify their loan obligation to appellant Atlantic Financial Federal (hereinafter "Atlantic") from wholly secured to partially secured and to reduce the dividend on general, unsecured claims. Appellant Atlantic opposed the debtors' motion. The bankruptcy court held a hearing on the proposed modification and then issued an order accepting the proposed modification 96 B.R. 804. Atlantic filed a timely appeal, and the matter is now before this Court for review.

## STATEMENT OF FACTS

The debtors filed a Chapter 13 petition and plan with the bankruptcy court on June 10, 1987. This original plan provided for payment in full of allowed secured and priority claims and a dividend of seventy percent on allowed unsecured claims. The plan also specified that the debtors' obligation to Atlantic, which was secured by a first mortgage on the debtors' personal residence, was fully secured, in that the value of debtors' residence was listed as $40,000 while debtors' obligation to Atlantic was listed as $34,000. The plan was confirmed by the bankruptcy court on August 31, 1987.

On November 3, 1988, the debtors filed a motion to modify their Chapter 13 plan. The proposed modification sought to reduce the dividend on unsecured claims from seventy percent to five percent. The decrease in dividend amount was necessitated by the recent assertion against the debtors of an obligation to Ameritrust Company National Association on which Mr. Frost had co-signed, which obligation had not been included in the debtors' original plan. The proposed modification also sought to re-classify the claim of Atlantic from fully secured to partially secured. Debtors contended that such a reclassification was justified because, according to the debtors, the value of their personal residence (alleged in the motion to modify to be $20,500.00) was less than the amount of indebtedness to Atlantic (approximately $34,000.00). Hence, under the debtors' proposed modification, the portion of the obligation to Atlantic up to the value of the real estate would be secured, but the portion of the obligation exceeding the value of the real estate would be unsecured. Accordingly, only five percent of the unsecured portion of the obligation would be paid.

Appellant Atlantic objected to the proposed modification on several grounds. First, appellant contended that debtors were seeking a modification of appellant's rights contrary to 11 U.S.C. § 1322(b)(2). Second, appellant argued that debtors' proposed modification failed the "good faith" requirement of 11 U.S.C. § 1325(a)(3) be-cause debtors had failed to justify the need to reduce the unsecured dividend to five percent. Third, appellant argued that under the proposed modification appellant would not receive the value of its secured claim as required by 11 U.S.C. § 1325(a)(5). Finally, appellant contended that it is simply impermissible under section 1329(a) of the Bankruptcy Code to modify a previously determined, fully secured claim to a partially secured claim. Atlantic also requested that the court order an independent appraisal of the debtors' property because of conflicting information concerning the property's market value.

On December 12, 1988 the bankruptcy court conducted a hearing on the debtors' modification motion. In support of debtors' contention that the value of their personal residence was less than the $34,-000.00 owed to Atlantic, Mr. Frost testified that, in his opinion, the property was worth "in the low 20's." The debtors also relied on an expert appraisal by James M. Wagonseller, made in July 1987 and submitted in connection with confirmation, which indicated that the market value of the property was $20,500. The bankruptcy court, however, decided not to consider this expert appraisal, finding that, since the parties had agreed at the time of confirmation that Atlantic's claim was fully secured, the expert appraisal was "not relevant to the treatment of Atlantic's interest as proposed at confirmation and Atlantic would not have sufficient reason to challenge that appraisal at the earlier date."

Appellant Atlantic did not have anyone testify at the modification hearing as to the value of the debtors' personal residence. Appellant did, however, ask for a continuance so that it could retain an expert to testify to a higher value for the property. The debtors opposed granting a continuance, citing its economic impact. The bankruptcy court denied the continuance because, in the Court's view, the debtors' motion clearly identified the amount of Atlantic's secured claim as an issue and because Atlantic was aware that valuation was an issue.

In its February 10, 1989 order, the bankruptcy court found that the debtors' personal residence was worth $23,000. The Court then addressed and rejected the legal arguments put forth by Atlantic as to why the proposed modification was contrary to sections 1322(b) and 1329(a) of the Bankruptcy Code. After reducing the $23,000 valuation by a cost of sale figure, the trial court decided that the proposed modification, making $20,500 of the obligation secured and the remaining amount unsecured, was proper.

On February 21, 1989, Atlantic timely filed its Notice of Appeal. Atlantic filed its brief on March 30, 1989. On June 1, 1989, debtors moved for an extension of time to file their brief, but no brief was thereafter submitted.

## DISCUSSION

Appellant presents five issues for review. For purposes of this discussion, the Court will initially consider the second issue presented. The Court will then proceed to the first, third, fourth and fifth issues.

### I.

Appellant contends that the rights of a holder of a claim secured by an interest in real property that is the debtor's principal residence cannot be modified. Appellant's argument is based on 11 U.S.C. § 1322(b)(2), which reads as follows:

(b) ... the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims.

Appellant argues that the language of section 1322(b)(2) clearly prohibits modifying any claim secured by an interest in the debtor's principal residence, regardless of the value of the residence.

The bankruptcy court disagreed with this interpretation. The bankruptcy court concluded that section 1322(b)(2) must be interpreted in a complementary manner with section 506(a), which states that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." Therefore, under the bankruptcy court's analysis, in order for "a claim secured only by a security interest in real property that is the debtor's principal residence" to be protected by section 1322(b)(2) from bankruptcy modification, the claim must be allowable as a "secured claim" under section 506(a).

The bankruptcy court's conclusion appears to this Court to be the more sound interpretation of section 1322(b)(2). The starting point in determining the meaning of this statute is of course the language itself. Section 1322(b)(2) provides that "the plan may ... modify the rights of holders of *secured claims, other than* a claim secured only by a security interest in real property that is the debtor's principal residence." (Emphasis added). To this Court, the word "claim" in the phrase "other than a claim secured only by a security interest ..." must be a *secured* claim because the words "secured claim" precede and modify the entire phrase. An undersecured claim, *i.e.*, a claim partly secured by an interest in a principal residence and partly unsecured, would be a "secured claim" within the meaning of section 506(a) only to the extent of the value of the residence, and thus only to that extent would it be exempt from modification under section 1322(b)(2). To hold otherwise would require ignoring section 506(a) and construing section 1322(b)(2) in a manner inconsistent with the plain language used in that statute. Accordingly, the Court concludes that section 1322(b)(2) precludes modification only of the secured portion of an undersecured claim, and does not preclude modification of any unsecured portion of such a claim.

The Court's interpretation of section 1322(b)(2) is in agreement with the equitable purposes of the Bankruptcy Code.

One of the primary purposes of bankruptcy law is to give the honest debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). This Court's interpretation of section 1322(b)(2) certainly promotes this fresh start interest. In contrast, appellant's interpretation would result in the debtors being burdened forever with a debt far in excess of the value of the collateral securing it.

Interpreting section 1322 to be conditioned upon section 506 is also in accord with the majority of courts addressing the issue. *See, e.g., Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 126–28 (3d Cir 1990); *In re Hougland,* 886 F.2d 1182, 1183–85 (9th Cir.1989); *In re Hill,* 96 B.R. 809, 813–14 (Bankr.S.D.Ohio 1989); *In re Harris,* 94 B.R. 832, 834–37 (D.N.J.1989); *In re Simmons,* 78 B.R. 300, 300–04 (Bankr.D.Kan.1987); *but see In re Hemsing,* 75 B.R. 689, 692 (Bankr.D.Mont.1987). *Collier on Bankruptcy* also shares the view that section 1322(b)(2) protects claims secured only by an interest in the debtor's principal residence which are also secured claims within the meaning of section 506:

> [A]n undersecured claim secured only by a security interest in the debtor's principal residence may still be divided into an allowed secured claim and an allowed unsecured claim, with the lien declared void to the extent it secures a claim in excess of the allowed secured claim.

*5 Collier on Bankruptcy,* ¶ 1322.06[a][1] (15th ed. 1990).

In conclusion, to this Court the more sound interpretation of section 1322(b)(2) is that it must be read in a manner which complements section 506(a). This interpretation is in accord with the weight of authority. Therefore, appellant's second assignment of error is without merit.

## II.

Appellant contends that the bankruptcy court erred by concluding that res judicata was not a bar to modifying appellant's rights as determined in the original plan. The bankruptcy court addressed this issue in its order and found that section 1329(a)(1) permitted the type of modification sought by the debtors.

Section 1329(a) reads as follows:

(a) At any time after the confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Appellant argues that section 1329(a)(1) only permits a bankruptcy court to reduce the amount of payments, not the actual amount to be paid. In other words, appellant argues that the bankruptcy court could reduce the monthly payments, but that if the payments were reduced, the payment period would need to be increased so that the amount paid would not change. The bankruptcy court disagreed, concluding that the total amount to be paid could be changed in a section 1329(a) modification proceeding. This Court agrees with the bankruptcy court's conclusion.

Initially, it should be noted that the phrase "to ... reduce the amount of payments on claims" is ambiguous. Depending on the surrounding sentences and other provisions of the Bankruptcy Code, the phrase can easily be interpreted in the manner suggested by appellant or in the manner determined by the bankruptcy court. This ambiguity explains the split in authority on the meaning of section 1329(a). Cases following the bankruptcy court's determination include *In re Davis,* 34 B.R. 319 (Bankr.E.D.Va.1983); *In re Jourdan,* 108 B.R. 1020 (Bankr.N.D.Iowa 1989); *In re Jock,* 95 B.R. 75 (Bankr.M.D.Tenn.1989). Cases in support of appellant's position in-

clude *In re Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga.1984) and *In re Taylor,* 99 B.R. 902 (Bankr.C.D.Ill.1989). However, a Chapter 13 debtor's unequivocal right to dismiss his Chapter 13 plan and then immediately refile, *see* 11 U.S.C. § 1307(b), leads this Court to interpret section 1329(a)(1) to allow a reduction in the amount to be paid. Why a Chapter 13 debtor's power to dismiss and refile should cause such an interpretation of section 1329(a)(1) was clearly explained in *In re Jourdan,* 108 B.R. 1020 (Bankr.N.D.Iowa 1989):

> Congress structured the Bankruptcy Code in a manner that encourages debtors to consider using Chapter 13.... Commensurate with the fact that Chapter 13 is both encouraged and voluntary, section 1307(b) of the Bankruptcy Code gives a Chapter 13 debtor the absolute right to dismiss its case. This right of dismissal is limited only by the requirement that the case had not been converted previously from another bankruptcy chapter. Once dismissed, there is nothing to prevent a debtor from immediately refiling another Chapter 13 case and seeking confirmation of another plan, so long as the previous dismissal was without prejudice, and the new plan complies with the requirements for confirmation set out in § 1325....

> If this Court denies Jourdan's application to modify his plan, he could achieve the result he seeks by dismissing and refiling. *See, e.g., In re Stone,* 91 B.R. 423, 425 (Bankr.N.D.Ohio 1988).... Thus, for reasons of judicial economy, there is no purpose to be served by requiring a different result to follow when the Debtor chooses to modify his pending case rather than achieve the same result through dismissal and refiling.

*Id.* at 1021–22. This Court agrees that it is pointless to interpret section 1329(a)(1) as denying a debtor the right to reduce the amount to be paid pursuant to a modification motion when the debtor can achieve the same result through dismissing and refiling. Based on the foregoing, this Court finds that the bankruptcy court's modification was within the scope of section 1329(a)(1) and was not barred by gen-

eral principles of res judicata. Therefore, appellant's first assignment of error is without merit.

### III.

Appellant's third assignment of error is that the bankruptcy court's determination of the market value of the debtors' personal residence was against the manifest weight of the evidence. Appellant argues that the court's determination was based solely on Mr. Frost's testimony that the residence was worth "in the low 20's" and that the determination that the residence was worth $23,000 was nothing more than a guess. Appellant also suggests that it was a bad guess because eighteen months earlier the debtors had indicated in their Chapter 13 plan that the residence was worth $40,000.

■ The bankruptcy court's conclusion that the residence was worth only $23,000 is a finding of fact subject to review under the clearly erroneous standard. A finding of fact is "clearly erroneous" when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ Applying the clearly erroneous standard to this case, the Court finds the following: The bankruptcy court's determination of value is in accord with the debtors' appraisal, *i.e.,* Mr. Frost's estimate. Appellant Atlantic did not provide an appraisal into evidence. There was a disparity between the value placed on the debtors' personal residence at the time the plan was originally confirmed and when the plan was modified. While not minimizing the importance of the disparity in value placed on the residence, this Court concludes that the bankruptcy court's decision was not clearly erroneous. Again, the bankruptcy court's determination was in accord with the only valuation in evidence. The bankruptcy

court was in the best position to determine the credibility of Mr. Frost's testimony as to the value of the residence as of the date of modification. Therefore, appellant's third assignment of error is without merit.

### IV.

■ Appellant's fourth assignment of error is that the bankruptcy court erred by not requiring the parties to submit expert testimony on the value of the personal residence. Appellant contends that Local Bankruptcy Rule C–LBR 3.18.11(b)(6) required the bankruptcy court to force the parties to submit expert testimony.

This argument is in error. C–LBR 3.18.11(b)(6) provides as follows:

> When appropriate, proposed plan modifications shall include:
>
> (6) If the motion to amend or modify proposes to change the payment to holders of allowed unsecured claims from one hundred percent (100%) to any amount less than one hundred percent (100%), an attachment consisting of an appraisal of any real estate in which the debtor has an interest, if such appraisal was not previously filed in connection with confirmation.

This rule requires, under appropriate circumstances, that a motion to modify a plan include an attachment consisting of an appraisal of any real estate of the debtor, if the appraisal had not already been submitted in connection with confirmation. Here the debtors did file an appraisal in connection with confirmation, although it was not contested at that time because of the parties' agreement as to the value of the debtors' residence. Furthermore, and in accordance with the local rule, the debtors did in fact attach this appraisal to their motion to modify the plan. Accordingly, the local rule on which appellant relies was complied with by the debtors, and although the bankruptcy court decided not to consider the expert appraisal submitted by the debtors in ruling on the debtors' motion to modify, this Court finds that the bankruptcy court did not err when it chose not to require the parties to submit another expert appraisal on the value of the property.

Appellant's fourth assignment of error is therefore without merit.

### V.

■ Appellant's final assignment of error is that the bankruptcy court erred by finding that debtors' changed financial circumstances justified modification of appellant's secured claim. According to appellant, there is no logical connection between the debtors' obligation to pay on the co-signed note and the need to reduce appellant's secured claim. Appellant's argument is without merit. In the Court's view, debtors' obligation of approximately $5,200 on a recently asserted prepetition debt justified modifying the Chapter 13 plan. Furthermore, this Court does not believe that the bankruptcy court based its decision to modify appellant's claim solely upon the $5,200 debt. Rather, it is clear from the court's order that the change in appellant's claim from fully to partially secured was based upon the value of the debtors' residence, and that the debt on the cosigned note justified reducing the dividend on unsecured claims from seventy percent to five percent.

### CONCLUSION

For the foregoing reasons, the Court finds each of appellant's assignments of error to be without merit. Accordingly, the bankruptcy court's order on application to modify plan is AFFIRMED.

IT IS SO ORDERED.