**In re John A. ALGEE, Debtor.**

**Bankruptcy No. 86–00934.**

United States Bankruptcy Court,
District of Columbia.

July 23, 1992.

Ronald F. Mitchell, William J. Kenney, Washington, D.C., for debtor.

Byron Huffman, Landover, Md., for Washington Federal, Landover, Md.

Cynthia A. Niklas, Washington, D.C., trustee.

## DECISION RE MOTION TO BIFURCATE BVC AND PCC LIEN CLAIMS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This case presents the issue whether, in the fifth year of his Chapter 13 plan, the debtor may bifurcate the claims of undersecured lien creditors in order to treat the bulk of their claims as unsecured. The debtor asserts that upon such bifurcation the unsecured claims will be subject to discharge. The plan implicitly treated the lien claims as secured without regard to their undersecured status and made no provision for the lien claims as unsecured claims. Accordingly, the court will deny the debtor's efforts at bifurcation as an attempted plan modification barred by the doctrine of *res judicata.*

### Facts

The debtor, John A. Algee, M.D., filed his chapter 13 petition on December 17, 1986. He had filed a prior chapter 7 bankruptcy case, Case No. 82–00722, in 1982 and had received a discharge in 1983. The chapter 13 statement listed the debtor's residence at 1518 5th Street, N.W., Washington, D.C. but failed to value it. The chapter 13 statement listed the property as subject to three mortgages:

| | |
|---|---|
| Washington Federal. Savings & Loan (successor to Jefferson Federal Savings & Loan) ("Washington Federal") | $ 64,000.00 |
| BVC Financial Enterprises, Inc. ("BVC") | $ 25,847.52 |
| Professional Capital Corp. ("PCC") | $ 69,000.00 |
| TOTAL | $158,847.52 |

The trustee's objection to confirmation noted that the debtor estimated the residence as worth $75,000. If the debtor's valuation of his residence was correct and had he invoked 11 U.S.C. § 506(a) at the outset of his case, Washington Federal would have had a fully secured claim, BVC would have had a claim secured by the $11,000 remainder of value in the residence (disregarding costs of realizing that value) and otherwise would have had a claim secured by none of the value, and PCC would have had a fully unsecured claim.

The debtor filed a plan calling for payments of an unspecified duration to the chapter 13 trustee of $2,000 per month. Paragraph 2 of the plan provided:

> From the payments so received, the trustee shall make disbursements as follows:
> (a) The priority payments required by 11 J.S.C. § 507.
> (b) After the above payments, dividends to secured creditors whose claims are duly proved and allowed as follows:
> Jefferson Federal Savings & Loan
> BVC Financial
> Professional Corp [sic]
> (c) Subsequent to (or pro rata with) dividends to secure [sic] creditors, dividends to unsecured creditors whose claims are duly proved and allowed as follows:
> Ronald F. Mitchell, Esq.
> Citibank (Visa)
> Mastercard
> Xerox Corp.
> Audio Digest
> D.C. Dept. of Employment
> Grace James
> Washington Federal Loan
> Atlantic Telephone & Telegraph
> Chesapeake & Pacific
> Potomac Electric Power
> PCA–Aetna
> Cardio Care, Inc.

The trustee objected that the amount of the debtor's pre-petition and post-petition arrears on the secured debts would warrant amending the plan to provide for the regular monthly mortgage payments inside the plan with plan payments increased accordingly.

A confirmation hearing was held on April 29, 1987, the Honorable George F. Bason, Jr., presiding. No transcript has been prepared.[1] The order of confirmation, entered on June 1, 1987, required payment of $2,000 per month to the chapter 13 trustee as had been originally provided in the plan and also provided that:

> The proposed Extension Plan, as orally amended to provide for payment inside the plan of all pre-confirmation arrears and regular mortgage payments to BVC Financial Enterprises, Inc. and Professional Capital Corp. be and the same is hereby confirmed.

The plan did not address the residue that would be owed to BVC and PCC upon conclusion of the plan: implicitly those amounts were to remain owing and secured by the creditors' liens. The bar date for filing proofs of *unsecured* claims expired on May 5, 1987, and neither BVC nor PCC filed a proof of claim, not having been mentioned as holders of unsecured claims in the plan.

On December 13, 1991, in the fifth year of the debtor's plan, the debtor filed a motion styled "Motion to Reopen, Modify and Amend Debtors Plan to Declare Defendants are Unsecured Creditors to the Extent Their Claims Exceeded the Fair Market Value of Their Claimed Security on the Date of the Filing of the Plan, to Cram Down Said Claims, Motion to Avoid all Liens Arising from Defendants Claims in Excess of Said Fair Value, and, Motion to Declare Said Debts Discharged." The debtor alleges that the $75,000 value of the house at the outset of the case results in a "fair value" under 11 U.S.C. § 502 (probably he means 11 U.S.C. § 506) of $65,000

---

1. On April 28, 1987, the day before the hearing, the debtor filed an amended plan providing for monthly payments of $2,485 per month and for dividends to Washington Federal as a secured creditor (no mention being made of BVC and

PCC). It appears that only the original plan was considered at the confirmation hearing or that it was agreed that the amended plan would be disregarded.

"when real estate brokerage fees and the trustee's administrative fees and expenses are considered." Thus he asserts that only $1,000 of BVC's and PCC's claims were secured. The debtor alleges that he was entitled to have the BVC and PCC liens "limited to the true secured value of their security interests, to wit: $1,000.00, and to have the balance of said claims declared to be an unsecured debt and to have [that] balance ... treated equally with all other unsecured debts." The debtor urges that he early on attempted to object to these liens as discharged by virtue of his prior chapter 7 discharge and thus gave "timely notice" of the intent "to provide for the discharge of these claims to the fullest extent permissible under the law." [2] It appears the debtor's motion seeks the following relief:

A. An order declaring that the fair value of his residence on December 17, 1986 was $65,000.00.

B. An order declaring that the value of the liens of BVC and PCC are limited to a joint amount of $1,000 and voiding the liens to the extent they exceed $1,000.

C. Treatment of the balance of the BVC and PCC liens as general unsecured claims to be treated equally with all other unsecured debts.

D. Modification of the plan such that only the actually allowed secured portion of the BVC and PCC liens are paid as secured claims.

The motion sought other relief of no relevance to this discussion.

**2.** The debtor also alleges that stripping down the liens is equitable because the security interests involved were obtained by fraud. His motion seeks to invalidate the liens on that basis and to obtain damages. The court previously treated those matters as not properly before the court as not brought by an adversary proceeding.

**3.** § 1329(a) provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

The SBA has become receiver for PCC. Grover–Walker Associates has become assignee and transferee of the BVC claim. Only the SBA and the chapter 13 trustee responded to the motion. The SBA notes that the tax assessment value of the residence is $100,679 as of July 1, 1991. The SBA objects to the debtor's motion, contending that (1) the doctrine of *res judicata* bars the motion, (2) 11 U.S.C. § 1322(b)(2) prevents lien stripping, (3) lien stripping is barred by *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), (4) modification under 11 U.S.C. § 1329 must be limited to the three categories of modification authorized by 11 U.S.C. § 1329(a),[3] (5) modification ought not be granted retroactively, and (6) the motion is untimely under the standards of F.R.Civ.P. 60. The chapter 13 trustee joins in some of these objections. I need only reach the first objection, that of *res judicata*.

*Discussion*

The court assumes, without deciding, that when the debtor filed this case the debtor could have voided PCC's lien in full and bifurcated BVC's lien into a small secured claim and a large unsecured claim and proposed a plan providing for payment of the allowed secured claim arrearages in full and payment of the unsecured claims of BVC and PCC pro rata with other unsecured creditors. *See In re Bellamy*, 962 F.2d 176 (2d Cir.1992).[4] The debtor, however, must first overcome the doctrine of *res judicata* before modifying his plan. The issue must be addressed in two separate regards. First, can the plan be mod-

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

**4.** The court notes that exhibit A to the SBA's opposition to the debtor's motion suggests that part of PCC's claim is secured by accounts receivable. That would be a basis for not according that claim the protection of 11 U.S.C. § 1322(b)(2).

ified to delete the provision for payment of all arrearages and regular monthly mortgage payments expressly required by the plan as orally amended? Second, can the residue of the BVC and PCC claims (that is, amounts beyond the arrearages and regular monthly payments expressly provided for) be classified as unsecured claims such that they are discharged with other unsecured claims?

### 1. *Modification as to Payments Expressly Required to BVC and PCC as Secured Creditors*

Modification of a plan to alter the treatment accorded a particular claim under the plan based on an issue that could have been litigated prior to confirmation is barred by the doctrine of *res judicata*. *In re Bereolos*, 126 B.R. 313 (Bankr.N.D.Ind. 1990). *See generally*, Comment, Postconfirmation Modification of Chapter 13 Plans: a Sheep in Wolf's Clothing, 9 Bankr.Dev.J. 153 (1992) ("Comment"). Without the doctrine of *res judicata* as a brake on § 1329, 11 U.S.C. § 1327(a)[5] would be rendered meaningless, with any confirmation issue subject to being revisited at whim. Thus, despite the seemingly unqualified language of 11 U.S.C. § 1329, courts have held that modification is not warranted unless there has been an unanticipated substantial change in circumstances, a test applied on an objective basis. *In re Arnold*, 869 F.2d 240, 243 (4th Cir.1989).

The *res judicata* doctrine has been applied against creditors: it bars a creditor from relitigating, by way of a motion for relief from the automatic stay, any questions, including lack of adequate protection, that could have been raised and decided at the confirmation hearing. *In re Evans*, 30 B.R. 530 (B.A.P. 9th Cir.1983); *In re Lewis*, 8 B.R. 132 (Bankr.Idaho 1981). The rule has also been held to preclude the IRS from obtaining modification of a plan to increase the fixed amount of priority taxes provided for in the plan even though it had a larger priority tax claim than stated in the plan. *In re Moseley*, 74 B.R. 791, 800

(Bankr.C.D.Cal.1987), *vacated as moot*, 101 B.R. 608 (B.A.P. 9th Cir.1989).

Generally the rule has been applied equally strictly against debtors. In the case of *In re Abercrombie*, 39 B.R. 178, 179 (Bankr.N.D.Ga.1984), the confirmed plan provided for full payment of a car lienor's claim, apparently with interest to assure present value under 11 U.S.C. § 1325(a)(5). When the car lienor obtained possession of the car, pursuant to relief from the automatic stay, to sell the vehicle based on a default in plan payments, the debtor sought to object to the car lienor's claim as unsecured (to the extent not satisfied by liquidation) and to modify the plan to reclassify the resulting unsecured claim as such. The court rejected this attempted modification, stating: "Section 1329 ... does not provide the debtor with a means to reclassify a previously allowed secured claim as unsecured after the plan has been confirmed. To do so would circumvent the principles of *res judicata*...."

Similar attempts at reclassification of claims originally treated as secured were rejected in *In re Sharpe*, 122 B.R. 708 (E.D.Tenn.1991), and *In re Holt*, 136 B.R. 260 (Bankr.D.Idaho 1992), on the basis that § 1329(a) literally does not authorize reclassification of claims but only modification in the treatment of claims of a particular class. I find it unnecessary to decide whether their rationale is correct. *See In re Frost*, 96 B.R. 804, 805 (Bankr.S.D.Ohio 1989) (taking contrary position), *aff'd*, 123 B.R. 254 (S.D.Ohio 1990).

In *In re Taylor*, 99 B.R. 902 (Bankr. C.D.Ill.1989), the court denied modification of a plan to provide that two unsecured claims (whose holders had been granted leave to pursue cosigners) would be treated instead as secured claims to be paid in full. The court observed (99 B.R. at 905) that as a general proposition "a debtor cannot change the basic structure of a confirmed chapter 13 plan mid-way through completion" but refused to adopt a blanket rule

---

**5.** § 1327(a) provides:

    (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by

the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

against modification via reclassification. The court refused modification because (1) the modification would unfairly prejudice the creditors and (2) the modification was not based on an unanticipated change in circumstances: "what has changed ... is the Debtors' desire to pay what to whom." *Id.*

More liberal applications of *res judicata* principles or abandonment of those principles occurred in *Frost*, 96 B.R. 804; *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989); *In re Stone*, 91 B.R. 423 (Bankr.N.D.Ohio 1988); and *In re Williams*, 108 B.R. 119 (Bankr.N.D.Miss.1989). The court finds each of these cases distinguishable or unpersuasive.

In *Frost* the debtors' confirmed plan provided for pre-petition arrearages on their residential mortgagee's claim to be paid in full under the plan with regular monthly payments to be kept current and provided for a 70% dividend to general unsecured creditors. The debtors sought modification of the plan to pay only the mortgagee's § 506(a) allowed secured claim (fixed at $20,500) and to pay general unsecured claims (including the mortgagee's unsecured claim) only a 5% dividend. "Modification was necessitated by recent assertion against the debtors of a significant obligation co-signed by Mr. Frost." *Frost*, 96 B.R. at 805. That distinguishes that case from this one where no change in circumstances has been alleged.

The court in *Frost* went on, however, to state:

> ... § 1329 creates an exception to the general rule [of *res judicata*]. The exception should be narrowly construed to avoid relitigation of all matters except those used unfairly against the party affected by the proposed modification. For example, if the party has no reason at confirmation to contest such issues as value or good faith because the treatment proposed was essentially nonimpairment, then a subsequent proposal seeking to modify that party's claim must permit the affected party to contest

those issues. The contest is not to reopen or change rights established by the original confirmation order, but to address the propriety of the proposed modification as it affects the party's claim. Therefore, the Court finds that the doctrine of *res judicata* does not bar consideration of issues relevant to the modification which were not necessary to determine [the mortgagee's] status at confirmation.

*Frost*, 96 B.R. at 808.

Standing alone, this is a novel view of *res judicata* which ordinarily bars not only relitigation of those issues actually raised but those that could have been raised. The court in *Frost* appears to have receded from this drastic view of § 1329 by then stating that § 1329 "permits a plan to accommodate changed circumstances...." *Frost*, 96 B.R. at 808. In the absence of an unanticipated change in circumstances, litigants and the court ought not be put to the burden of more than one confirmation hearing.

But even if this court followed the *Frost* test without the qualification of a requirement of an unanticipated change in circumstances, the court would have to deny modification here. Under *Frost*, the exception of § 1329 to *res judicata* does not apply to "relitigation of ... matters ... used unfairly against the party affected by the proposed modification." *Id.* Here the plan (as orally amended) specifically provided for arrearages and monthly payments to be paid BVC and PCC under the plan. The only reasonable interpretation of the plan, as orally amended, is that the obligations due BVC and PCC were to be brought current and kept current without any qualification based on the value of the collateral. To the extent those payments are of unsecured claims within the meaning of § 506(a), no proofs of claim were filed for their payment as unsecured claims.[6] Thus, to treat them now as unsecured—when the plan, as orally amended, clearly provided for them as allowed secured claims—would

---

6. Under F.R.Bankr.P. 3002(a) only unsecured creditors are required timely to file proofs of

claim in order for their claims to be allowed.

clearly prejudice BVC and PCC. This precludes modification. *In re Rush*, 6 B.C.D. 139 (Bankr.S.D.Fla.1980) (modification would penalize secured creditors, which in reliance on direct payment, had not filed proof of claim).[7]

Nor is this a case like *Stone* or *Jock* where the debtor seeks post-confirmation to surrender or has surrendered collateral to the secured creditor for foreclosure instead of retaining the property as originally contemplated by the plan. The debtor here seeks to retain the collateral as his residence. There has been no change in that circumstance.[8]

Nor is this a case like *Williams,* where the debtors sought to alter the plan's payment terms regarding a second deed of trust on their residence. The plan had provided for curing of the prepetition arrears on the debt and payment of the regular monthly payment outside the plan. The debtors then realized that the limitations of 11 U.S.C. § 1322(b)(2) did not apply to this deed of trust—it was secured by a rental property as well. They sought to modify the plan to provide for this deed of trust under 11 U.S.C. § 1325(a)(5) so as to pay only the § 506(a) value of the lien over time with interest. *Williams,* 108 B.R. at 120, 124 par. 3. But necessity for the modification had apparently arisen because the debtor-wife had become separated from her husband after confirmation and his income was no longer available to support the plan. In contrast, all that has happened here is that the debtor—through new counsel—has finally "smelt the coffee" and realized that he could have proposed a plan providing for practically nothing to be paid to BVC and PCC as secured creditors. That is not the type of changed circumstance that warrants modification of a plan.

To the extent that *Jock, Stone* and *Williams* are not unanticipated changed circumstances decisions, I decline to follow them. They can be read as stating that § 1329 allows any modification passing muster under confirmation standards. That abandonment of *res judicata* principles places every confirmation order to the whim of any creditor or debtor who wants to litigate an issue that previously had not been raised but could have been raised (or to relitigate an issue already raised and decided). To the extent these decisions rest on the proposition that the debtor could convert the case to chapter 7 and strip the lien of its undersecured portion, *see, e.g., Williams,* 108 B.R. at 124 par. 3, that justification for allowing modification has proven unfounded in light of *Dewsnup v. Timm.* To the extent they rest on the debtor's ability to dismiss and refile a new plan, that rationale has no force here where plan payments are largely completed. Moreover, dismissal and refiling would raise questions of *res judicata* and bad faith. *See* Comment, 9 Bankr.Dev.J. at 160–161. Those issues ought to be addressed in a new case, not by way of modification.

Under *Bellamy,* if correctly decided, the debtor could have provided at the outset of the case that the BVC and PCC lien claims would be paid as secured claims only the amount by which they were truly secured within the contemplation of 11 U.S.C. § 506(a) and that the unsecured portion of the BVC and PCC claims would be treated the same as other unsecured claims. He failed to do so. The debtor cannot now propose a plan that does not provide for curing of the pre-confirmation arrearages owed to BVC and PCC and payment of the regular monthly mortgage payments over the life of the plan. The debtor has ad-

7. *Rush* was cited by *Frost* itself as an example of a modification that would unfairly penalize a secured creditor.

8. The danger in allowing modification of a plan to allow surrender of collateral after confirmation of a plan providing for the debtor's retention of the collateral is that the collateral may have declined in value in an amount greater than payments to the secured creditor. If that vice is not present, the modification allows the secured creditor only to realize the proceeds of the collateral as a secured claim. Those courts which have refused such modification (*Sharpe, Holt* and *Abercrombie* ) may in part be concerned with the unfairness of subjecting the secured creditors to litigation over how much the collateral declined when the debtor had the option at the outset to surrender the collateral.

vanced no changed circumstances that would warrant modification of those provisions.

### 2. *Treatment of Residue of BVC and PCC Claims as Unsecured*

■■■ The issue nevertheless remains whether the debtor can invoke the aid of this court to deal in any fashion with the residue of the BVC and PCC claims remaining after paying the arrearage claims and the regular monthly payments that accrued during the plan's administration. Can he transform that residue into unsecured claims by obtaining a determination that only $1,000 or some other amount of the claims was an allowed secured claim within the meaning of 11 U.S.C. § 506(a)? That would not be inconsistent with the terms of the plan: BVC and PCC would still retain the payments made under the plan of arrearages and regular monthly payments. Classification of the residue of the claims as unsecured would simply classify those remaining balances under § 506(a), with any attendant consequences that the unaltered plan would have on such claims.

Stating it differently, under *Bellamy*, 962 F.2d at 181, bifurcation of a claim into secured and unsecured portions is not a plan provision but is only a function of 11 U.S.C. § 506(a). Bifurcation of the BVC and PCC claims would then not be a plan modification but only a recognition under § 506(a) of the predominantly unsecured status of those claims. Once declared to be unsecured, the debtor argues, the residue of the BVC and PCC claims ought to be treated with other unsecured claims and discharged.

But the plan here never provided for the claims of BVC and PCC to the extent they were unsecured claims. From the perspective of BVC and PCC the plan provided for their claims only as secured claims: although specifically mentioned with the secured claim of Jefferson Federal (the original holder of Washington Federal's claim), the BVC and PCC claims were not mentioned in the list of holders of unsecured claims enumerated in the plan. The debtor proposed the plan and, in the absence of any other evidence, the court ought to resolve any ambiguities in the plan against the debtor. When thus interpreted, the plan never provided for the BVC and PCC claims as unsecured claims.

Thus, the debtor's motion necessarily seeks to revise the plan to make provision for the first time of unsecured claims of BVC and PCC. This the doctrine of *res judicata* prohibits: the binding effect of § 1327 applies to claims even if they are not provided for by the plan. Moreover, any modification would be prejudicial because BVC and PCC never filed proofs of claims.

Because the plan made no provision for payment of the BVC and PCC claims as unsecured claims and because the plan cannot be modified, it is irrelevant, for purposes of administering payments under the debtor's plan, whether the residue of the BVC and PCC claims are in fact unsecured. Moreover, the question is also irrelevant for dischargeability purposes because only any unsecured portion of lien claims provided for by the plan would be discharged upon completion of the plan. 11 U.S.C. § 1328(a).

The court has assumed, without deciding, that under *Dewsnup*, as interpreted in *Bellamy*, the debtor may engage in lien stripping incident to a reorganization plan. But here the debtor's reorganization plan did not address whatever unsecured claims BVC and PCC had. Under the doctrine of *res judicata* it is too late to modify the plan to make provision for whatever unsecured claims BVC and PCC hold. That being the case, *Dewsnup* compels the conclusion that no proper purpose would be served by bifurcating the BVC and PCC claims: that would be lien stripping, as in a chapter 7 case, without reorganization with respect to the debt, and *Dewsnup* prohibits such naked lien stripping.

### *Conclusion*

The debtor is no worse off than had he filed no bankruptcy and pursued this type of arrangement with BVC and PCC outside bankruptcy. He simply failed to recognize his bankruptcy right (assuming *Bellamy* was correctly decided) to discharge the unsecured portion of the BVC and PCC liens by providing for some pro rata divi-

dend to such unsecured claims under the plan. The confirmed plan cannot be undone. Based on the foregoing, the motion will be denied.