**In the Matter of Sandra (NMN) PRUITT, Debtor.**

**Bankruptcy No. 95–30020 HCD.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

March 22, 1996.

Lynn G. Chase, South Bend, Indiana, for debtor.

James H. Milstone, Thorne, Grodnik, Ransel, Duncan, Byron & Hostetler, Elkhart, Indiana, for South Bend Post Office Credit Union.

Tedd E. Mishler, Standing Chapter 13 Trustee, Michigan City, Indiana.

*MEMORANDUM OF DECISION*

HARRY C. DEES, Jr., Bankruptcy Judge.

On April 12, 1995, Sandra Pruitt, the debtor, filed her CHAPTER 13 PLAN. On May 11, 1995, the South Bend Post Office Credit Union ("Credit Union") filed its objection to the debtor's plan.[1] The court held a trial on

---

1. The Standing Chapter 13 Trustee also filed an objection which was later withdrawn.

confirmation of the debtor's plan on August 18, 1995. On January 25, 1996, the court entered its special order confirming the debtor's plan, overruling that part of the Credit Union's objection relating to the determination of the debtor's disposable income and the treatment of unsecured claims. On the same date the court took under advisement the issue of whether the debtor's plan may require the Credit Union to release its lien on the title of the debtor's vehicle upon the payment of the Credit Union's allowed secured claim.

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200.1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014.

### Background

On January 4, 1995, the debtor filed her voluntary petition under Chapter 13 of the Bankruptcy Code. The debtor's CHAPTER 13 PLAN states in relevant part:

> The claim of the South Bend Post Office Credit Union is secured by a 1992 Plymouth Grant [sic] Voyager LE automobile. The debtor will pay the wholesale value of the automobile, which she believes is $9,950.00. The secured claim will be paid with nine (9%) percent interest through the plan. Upon payment of the secured portion of the automobile claim, the creditor will release [its] lien on the title of the automobile. The creditor will have an allowed unsecured claim for the balance of the debt, which will be treated as a Class 5 Sub–Class A claim.

Plan at 3. The Credit Union submitted that this provision violates 11 U.S.C. § 1325 by failing to give the Credit Union the "indubitable equivalent" of the value of its secured claim. Obj. at 1, citing *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995). Specifically, the Credit Union argued that it is entitled to retain its lien on the debtor's vehicle until the debtor makes all of the payments required under the plan and receives her discharge. The debtor and the Standing Chapter 13 Trustee in turn submitted that the debtor is entitled to the release of the Credit Union's lien against her vehicle upon payment of the Credit Union's secured claim under her plan.

### Discussion and Decision

The issue before the court is whether a Chapter 13 plan which provides for the release of an undersecured creditor's lien upon full payment of its allowed secured claim, but prior to payment of its allowed unsecured claim, completion of the Chapter 13 case, and/or receipt of a discharge, may be confirmed over the creditor's objection. Title 11 U.S.C. § 1325(a)(5)(B) permits a court to confirm a plan over the objection of a holder of secured claim if: "(i) the plan provides that the holder of such claim will retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of the claim is not less than the allowed amount of the claim." 11 U.S.C. § 1325(a)(5)(B)(i) and (ii) (Callaghan 1996). The section does not specify the circumstances under which a debtor can require a creditor to release its lien against the collateral. The cases on the issue are divided.

One line of cases holds that a Chapter 13 plan which modifies an undersecured creditor's rights by reducing the creditor's allowed secured claim to the value of the collateral securing the indebtedness and treating the remainder of the indebtedness as an allowed unsecured claim pursuant to 11 U.S.C. § 1322(b)(2) may provide for the release of a creditor's lien upon payment of its allowed secured claim. *E.g., In re Nicewonger,* 192 B.R. 886 (Bankr.N.D.Ohio 1996), citing *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992); *In re Lee,* 156 B.R. 628 (Bankr.D.Minn.1993) (O'Brien, J.), *aff'd,* 162 B.R. 217 (D.Minn.1993). These courts

hold that the undersecured portion of the creditor's lien is voided upon payment of the allowed secured claim. 192 B.R. at 888–89, citing 11 U.S.C. § 506(d). The courts which permit the release of an undersecured creditor's lien prior to completion of the plan or entry of discharge downplay the relevance of § 349(b),[2] concluding that "a Code provision dealing with potential dismissal cannot act to circumvent the rights specifically granted to chapter 13 debtors." 192 B.R. at 890, citing *Murry–Hudson,* 147 B.R. at 962–64; *Lee,* 156 B.R. 628; *In re Newton,* 64 B.R. 790, 793 (Bankr.C.D.Ill.1986). These courts take the position that § 349(b) simply restores the parties' rights " 'as far as practicable' " based on the facts of each case. 192 B.R. at 889–90, quoting *In re Jones,* 152 B.R. 155, 180 (Bankr.E.D.Mich.1993), quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977). The courts taking this view believe that the public policy of affording the debtor a fresh start overrides the concern about the potential abuse which could occur if a debtor pays off an allowed secured claim under the plan and then dismisses his or her case without fulfilling the remainder of the obligations under the confirmed plan.

Another line of cases holds that a debtor may not obtain release of the lien of the holder of a secured claim until he or she successfully completes the confirmed plan and receives a discharge. *E.g., In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995) (Kishel, J.); *Nationsbank, Inc. v. Holiday (In re Holiday),* 1993 WL 733165 (Bankr. S.D.Ga. Mar. 30, 1993). These courts opine that liens "float through" Chapter 13 bankruptcy unaffected, unless the debtor earns the right to avoid the liens by obtaining a discharge. As the *Scheierl* court explained:

> [C]hapter 13 is a collective proceeding, in which debtors can—and must—propose and effect a *comprehensive* solution to their difficulties with creditors. A Chapter 13 plan is appropriately termed a "new contract" running between the debtor and all of his creditors. 11 U.S.C. § 1327(a). *See also In re Babbin,* 156 B.R. 838, 850 (Bankr.D.Colo.1993), *rev'd in part on other*

*grounds,* 160 B.R. 848 (D.Colo.1993); *In re Nicholson,* 70 B.R. 398, 400 (Bankr.D.Colo. 1987); *In re Winterfeldt,* 28 B.R. 486, 488 (Bankr.E.D.Wis.1983). Like any contract, this one embodies bilateral covenants and considerations. Those pertinent to the debtor's status are simply summarized: in return for the completed performance of a promise to make payments pursuant to the plan, the debtor receives the permanent benefit of an adjustment of pre-petition obligations, discharge of debts, and various ancillary remedies.... [T]his contract really has to await the debtor's full performance before the benefit of any of his statutory remedies may become final, binding, and fully effectuated on the public record.

> This principle is not explicitly articulated in the Bankruptcy Code and Rules, but its resonance is evidenced in two provisions. 11 U.S.C. § 1307(b) gives the debtor an unfettered right to obtain dismissal of his case at any time, on an *ex parte* basis and without a showing of cause. In the event of such a dismissal, 11 U.S.C. § 349(b) restores the full pre-petition *status quo* as to the debtor's property rights, and his creditors' competing claims against them. These provisions answer the question of whether a debtor's effort in Chapter 13 has any final, binding effect on creditors' rights if the debtor leaves bankruptcy before full performance under his plan. They certainly mean that a Chapter 13 case cannot bring about any permanent reordering of property and contract rights, partial or comprehensive, until the debtor meets a threshold requirement: entitlement to a discharge, by "complet[ing] ... all payments under the plan" pursuant to 11 U.S.C. § 1328(a).

176 B.R. at 504–505 (emphases in original; footnotes omitted). The courts taking this position conclude that "[t]he advantages available under Chapter 13 are reserved to the financially rehabilitated debtor to facilitate the debtor's fresh start following successful plan completion and discharge or hardship discharge." *Holiday,* 1993 WL

---

**2.** This section provides that a dismissal of a case (other than under § 742 of the Bankruptcy Code) reinstates any lien avoided under § 506(d). 11 U.S.C. § 349(b)(1).

733165, at *3. They stress that Chapter 13, which provides incentives not available under Chapter 7, does not offer "a piecemeal approach to plan completion," but requires a debtor's full efforts in completing the obligations of a rehabilitation plan. *Id.* at *2–3. These courts submit that requiring the debtor to fulfill plan commitments prior to obtaining release of the creditor's lien does not hamper the debtor's fresh start, but simply strikes a fair balance among the parties to the proceeding.

 Considering the relevant Code provisions and case law, this court sides with the latter view. The court agrees that Congress intended for Chapter 13 to be a comprehensive solution to a debtor's problems, rather than a piecemeal strategy to obtain a fresh start. The court concludes that permitting an undersecured creditor to retain its lien pending the completion of a debtor's plan appropriately protects the creditor's interests in the event of a subsequent dismissal of the debtor's case. The court determines that releasing the lien prior to completion of the plan and discharge would thwart the underlying purpose of § 349(b) which is to restore the parties' property rights in the event of a dismissal. 1993 WL 733165, at *2. The court believes that if Congress had intended for a lien to be released upon payment of the creditor's allowed secured claim, it would have drafted § 1325(a)(5)(B)(i) to require that a plan provide "that the holder of such retain the lien securing such claim *until the creditor receives full payment of the allowed secured claim.*" Congress did not do so. Given the actual wording of the section, the court determines that retention of the creditor's lien pending completion of a Chapter 13 plan and receipt of a discharge is appropriate unless the creditor agrees to other treatment. The court concludes that this requirement should not unduly hamper the debtor's efforts to reorganize. In the event the debtor needs to sell the vehicle and obtain other transportation prior to the conclusion of her plan, she may apply to the court for appropriate relief. Although retention of the lien until the completion of the plan and discharge may curtail the debtor from obtaining a "jump start" in reorganizing, the court concludes that it does not jeopardize her efforts to gain the "fresh start" which Congress contemplated in drafting the Bankruptcy Code.

### Conclusion

The court sustains the Credit Union's objection to the language in the debtor's CHAPTER 13 PLAN which provides for the release of the Credit Union's lien upon full payment of its allowed secured claim, finding that the debtor may not obtain release of the lien until she successfully completes the confirmed plan and receives a discharge or obtains other appropriate relief from the court. The debtor's CHAPTER 13 PLAN, previously confirmed by the court, is hereby modified to provide for release of the Credit Union's lien upon completion of the debtor's plan payments and receipt of discharge.

SO ORDERED.