### In re Paul A. ZAKOWSKI and Linda M. Zakowski, Debtors.

### Bankruptcy No. 92–23686–MDM.

United States Bankruptcy Court, E.D. Wisconsin.

Sept. 10, 1997.

Christine Wolk, Oshkosh, WI, for Debtors.

David Van Lieshout, Little Shoot, WI, for M & I Bank.

### MEMORANDUM DECISION

MARGARET DEE McGARITY, Bankruptcy Judge.

### I. INTRODUCTION

Before the court is a motion by the debtors for an order establishing the extent of the secured claim of M & I Bank, f/k/a Valley Bank of Sherwood, pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012, and for a determination that the secured portion of the claim has been paid in full. This court determined that the secured claim of M & I had been paid in full pursuant to the terms of the debtors' plan. The bank objected to the form of the order to the extent that it provides that the bank is obligated to release its security before receiving payment of the unsecured amount pursuant to the chapter 13 plan. This court must determine whether a creditor must release its mortgage on an unsecured claim which arose from a preexisting floor plan note that was secured by a

subsequent mortgage which has been paid in full. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

## II. FACTS

Debtors, Paul and Linda Zakowski, filed a chapter 13 petition and plan on June 4, 1992. At that time, the debtors owed Valley Bank of Sherwood, n/k/a M & I Bank, approximately $137,309.00, the sum of two notes. The first note, a floor plan note, is a Demand Promissory Note dated March 27, 1989 for $60,000.00, secured by all existing and future security agreements and mortgages between the bank and the maker, indorser or guarantor of the note. The note was signed by Paul Zakowski, on behalf of the debtors' business, Countryside Auto Body & Sales. The second note is a Business Note dated August 19, 1991 for $87,468.78, secured by a mortgage on the business premises and a semi-tractor of the debtors. At the time of the petition, the value of the collateral, the real estate and the semi-tractor, was $90,000.00. Also at the time of the petition, there was an outstanding real estate tax claim of Calumet County for approximately $6,188.78, which was secured by the collateral.

The debtors' original and first amended plans provided that the monthly payments on the mortgage were to be paid directly to the bank by the debtors, and the secured creditors retained their liens until paid through the plan (Chapter 13 Plan, filed 6/4/92; Amended Chapter 13 Plan, filed 8/7/92). Valley Bank, n/k/a M & I Bank, objected to confirmation of the debtors' plan because there was not an amortized monthly payment on the debtors' mortgage or on the floor plan loan. Furthermore, there was no provision providing for payment of the unsecured portion of its claim over the course of the plan. After a hearing before the court on September 9, 1992, the debtors filed a revised amended plan, which provided "[a]n amortized monthly payment in the amount of $1,935.00 shall continue to be made debtor

direct to the Valley Bank of Sherwood on a mortgage for the business property with the balance of the note due at the end of the Plan." (Revised Amended Chapter 13 Plan ¶ 2(f), filed 9/28/92). The revised amended plan, pursuant to which unsecured creditors were to receive 100% of their claims, was confirmed by this court on October 30, 1992, effective October 19, 1992.

Valley Bank's proof of claim, previously filed on June 29, 1992, stated that the principal amount due was $139,343.00 and the fair market value of the collateral securing the debt was $90,000.00. The debtors objected to the classification of the bank's claim. The bank asserted that the demand note was subject to all existing and future security agreements and mortgages between the bank and the maker. The debtors subsequently withdrew their objection during the preliminary hearing on the objection because both claims were to be paid in full; the business note was to be paid directly to the creditor with a balloon payment at the end of the plan, and the demand note was to be paid through the plan (Court Minutes of Hearing, 2/26/93).

Throughout the pendency of the chapter 13 plan, various parties have moved the court to dismiss or convert the case for failure to make payments under the plan (Trustee's motions, 2/2/93, 10/3/94, 1/29/97; Valley Bank's motions, 2/8/93, 5/18/94, 2/8/96; United States' (IRS) motion, 3/14/95). The trustee has filed a motion to dismiss the confirmed plan due to material default, which was supported by the Internal Revenue Service. This motion is currently pending before the court. The bank has never moved for relief from the automatic stay because of environmental contamination concerns with the property (Court Minutes of Hearing, 3/6/96).

On August 14, 1995, the debtors sold the tractor trailer secured by M & I Bank, f/k/a Valley Bank, and proceeds of $30,333.27 were remitted to the bank in exchange for a lien release. The parties agreed that payment was accepted conditioned upon approval of the transaction by the trustee. As part of the agreement, all remaining debt would be combined as one debt with interest of 11.75%

and amortized so the debtors would pay $1,000.00 per month commencing with the next payment due. The balance would be paid in a balloon payment at the end of the plan. M & I then filed a motion to dismiss or convert the case after the debtors defaulted on their monthly payments. This court determined that dismissal or conversion would be inappropriate at the time, since the debtors had already paid over $150,000.00 to their creditors inside and outside the plan (Court Minutes of Hearing, 3/6/96). The bank later withdrew its objection after the debtors amended their plan.

The debtors filed a Second Amended Chapter 13 Plan on April 5, 1996 which provided the following: "Monthly payment in the amount of $1,500.00 shall continue to be made debtor direct to the Valley Bank of Sherwood, n/k/a M & I Bank—Sherwood, on its secured claim.... All creditors, including M & I, shall be paid to 100% of approved claim as balloon payment at end of Plan." (Second Amended Chapter 13 Plan ¶ 2(e, f), filed 4/5/96). The second amended plan also provided, "[t]he secured creditors shall retain their liens until paid through the Plan." (Second Amended Chapter 13 Plan ¶ 3, filed 4/5/96). This plan was confirmed by the court on May 3, 1996, effective April 25, 1996.

On April 23, 1997, the debtors moved the court for an order establishing the extent of the bank's secured claim, pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012, and for a determination that the secured portion of the claim has been paid in full. The court determined that the secured claim of M & I had been paid in full pursuant to the terms of the debtors' plan (Court Order, 6/6/97). The bank objected to the order to the extent that it implies that the bank is obligated to release its security before receiving payment of the unsecured claim. The bank does not object to the amount of the remaining unsecured claim, $41,187.00.

## III. ARGUMENTS

The debtors argue that they are entitled to a satisfaction of the Bank's mortgage on their business real property because the secured claim has been paid in full. The debtors cite *In re Nicewonger,* 192 B.R. 886 (Bankr.N.D.Ohio 1996), to support their position that the holder of a secured claim may be required to release its lien upon receiving payment through the plan of the value of its interest in estate property.

The bank contends that if the debtors do not pay the unsecured claim under the plan, then they have violated the plan and are not entitled to the protection granted to them under the plan. If M & I Bank is required to satisfy the mortgage on the real estate owned by the debtors, and the debtors' chapter 13 bankruptcy is dismissed for failure to complete the plan as amended, the debtors would unfairly receive the benefit of a completed chapter 13 bankruptcy. This result would be in contravention of § 349 of the Bankruptcy Code, which provides that upon dismissal, the parties' rights are re-established to those that existed prior to the bankruptcy filing. Although a voided security interest is restored if a Chapter 13 is dismissed, *In re Groves,* 27 B.R. 866 (Bankr. D.Kan.1983), the bank argues there cannot be a restoration after the case is dismissed if the security interest is satisfied. The satisfaction of the security interest would extinguish the security and any effort to restore the security later might affect the rights of third parties, such as a future lender funding the balloon payment under the plan, who is not a party to the plan or to this dispute.

The bank also believes that this belated attempt by the debtors to obtain a satisfaction of the mortgage is inequitable. If the bank had known the debtors intended to seek release of the mortgage before payment of 100% of the unsecured amount as provided in the plan, the bank would have objected to confirmation of the debtors' plan.

## IV. ANALYSIS

As explained above, the secured claim consisted of the entire mortgage balance (the two notes were not bifurcated), and was to be paid directly to the creditor with a balloon payment at the end of the plan. The secured portion of the claim has been paid in full. The debtors' chapter 13 plan will expire October 19, 1997.

Section 506(a) of the Bankruptcy Code provides, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Additionally, § 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

Various courts have been faced with a similar issue in a different context: whether a chapter 13 plan which provides for the release of an undersecured creditor's lien upon full payment of its allowed secured claim, but prior to payment of its allowed unsecured claim, completion of the chapter 13 case and/or receipt of a discharge, may be confirmed over the creditor's objection. In this case, release of the bank's lien is not unambiguously provided for in the debtors' plan, although the provision that secured creditors retain their liens until paid through the plan could be interpreted to provide for such a release. The pending motion is made pursuant to § 506, not in the context of confirmation, but the determination to be made by this court is sufficiently analogous for these plan confirmation cases to provide useful guidance.

Section 1325 of the Code provides that the court shall confirm a chapter 13 plan over the objection of a holder of a secured claim if:

> (i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B)(i & ii). This provision does not address whether the creditor is allowed to retain its lien rights only until the secured portion of its claim has been paid or until all payments to that creditor under the plan are complete.

One line of cases holds that debtors cannot obtain confirmation of any plan that would allow them to demand release of a secured creditor's lien before they complete all payments to all creditors under their plan and receive a discharge. *In re Burba,* 42 F.3d 1388 (6th Cir.1994) (table, text in Westlaw); *Matter of Pruitt,* 203 B.R. 134 (Bankr. N.D.Ind.1996); *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995); *In re Jordan,* 164 B.R. 89 (Bankr.E.D.Mo.1994); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993); *In re Gibbons,* 164 B.R. 207 (Bankr.D.N.H.1993). According to this view, liens float through chapter 13 bankruptcy unaffected, unless the debtor earns the right to avoid the liens by obtaining a discharge. A Minnesota bankruptcy court, *In re Scheierl,* likened a chapter 13 plan to a "new contract" between the debtor and his or her creditors:

> Like any contract, this one embodies bilateral covenants and considerations. Those pertinent to the debtor's status are simply summarized: in return for the completed performance of a promise to make payments pursuant to the plan, the debtor receives the permanent benefit of an adjustment of pre-petition obligations, discharge of debts, and various ancillary remedies. . . . [T]his contract really has to await the debtor's full performance before the benefit of any of his statutory remedies may become final, binding, and fully effectuated on the public record.

*In re Scheierl,* 176 B.R. at 504. The *Scheierl* court noted that the Bankruptcy Code and Rules do not specifically articulate this principle; however, the court based its reasoning upon two Code provisions. Section 1307(b) gives the debtor an absolute right to obtain dismissal of its case at any time, on an *ex parte* basis and without a showing of cause. After such dismissal, § 349(b) restores the pre-petition status quo as to the debtor's property rights, and the creditors' competing claims against them. Consequently, creditors' rights are not modified until the debtor

fully performs under the plan pursuant to § 1328(a). *See Scheierl,* 176 B.R. at 504–05.

An Indiana bankruptcy court found support for the same position in § 1325(a)(5)(B)(i). *Matter of Pruitt,* 203 B.R. at 137. The *Pruitt* court pointed out that if Congress had intended for a lien to be released upon payment of the creditor's allowed secured claim, it would have drafted § 1325(a)(5)(B)(i) to require that a plan provide "that the holder of such retain the lien securing such claim *until the creditor receives full payment of the allowed secured claim."* *Id.* Thus, given the wording of the statute, the court concluded that retention of the creditor's lien pending completion of a chapter 13 plan and receipt of a discharge is warranted.

In *In re Jones,* 152 B.R. at 179–80, the Michigan bankruptcy court applied § 506(d) in reference to § 551, which provides that "any lien void under section 506(d) ... is preserved for the benefit of the estate[,] but only with respect to property of the estate." The court reasoned that since a lien cannot simultaneously be rendered "void" and yet "preserved," the lien retains its validity at least until such time as the collateral ceases to be property of the estate. *Id.* Unlike *Jones,* under this court's order of confirmation, all property of the estate under 11 U.S.C. § 1306(a) remains under the jurisdiction of the bankruptcy court rather than vesting in the debtor as provided by 11 U.S.C. § 1327(b), which arguably makes its reasoning more applicable to the instant case than to the facts in *Jones,* wherein estate property vested in the debtor at confirmation.

The bankruptcy court in *In re Jordan,* 164 B.R. at 91, specifically addressed the bank's concern regarding a subsequent conversion to chapter 7. The court determined that by initially filing for chapter 13 relief and then converting when the secured portion of the creditor's claim was paid, the debtors were essentially attempting to circumvent the Supreme Court's prohibition against lien stripping in chapter 7, as articulated in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Under this line of reasoning, permitting an undersecured creditor

to retain its lien until the debtor completes its plan appropriately protects the creditor's interests in the event of a conversion of the debtor's case.

The debtor urges this court to follow another line of cases that holds that the holder of a secured claim can be required to release its lien upon receiving payment through the chapter 13 plan of the value of its interest in estate property that is not surrendered. *In re Hernandez,* 175 B.R. 962 (N.D.Ill.1994); *In re Nicewonger,* 192 B.R. 886 (Bankr. N.D.Ohio 1996); *In re Cooke,* 169 B.R. 662 (Bankr.W.D.Mo.1994); *In re Peterson,* 163 B.R. 581 (Bankr.D.Idaho 1993); *In re Lee,* 156 B.R. 628 (Bankr.D.Minn.), *aff'd,* 162 B.R. 217 (D.Minn.1993); *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992); *In re Pickett,* 151 B.R. 471 (Bankr.M.D.Tenn.1992).

The bankruptcy court in *Nicewonger,* 192 B.R. at 889, noted that 11 U.S.C. § 1322(b)(2) clearly states that a chapter 13 plan may "modify the rights of holders of secured claims." Furthermore, the Congressional record states that "Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor." Revision Notes and Legislative Reports to 1978 Act, Senate Report No. 95–989, *reprinted in* 11 U.S.C.A. § 1322. Thus, according to this line of cases, the modification of creditors' rights in § 1322 and the bifurcation of undersecured claims in § 506(a), demonstrates that the holder of an undersecured claim has been afforded due process upon the receipt of the present value of its collateral through plan payments. The court concluded, therefore, the creditor can be required to release its lien prior to the payment of any dividend provided by the chapter 13 plan on the unsecured portion of the amount owing to it. *See Nicewonger,* 192 B.R. at 889.

A California bankruptcy court considered the creditor's concerns regarding the possibility that a debtor might dismiss or convert her chapter 13 plan shortly after paying off her allowed secured claims and receiving certificates of title for her vehicle. *In re Murry–Hudson,* 147 B.R. 960, 962–63 (Bankr. N.D.Cal.1992). The court determined that the prerequisites to plan confirmation, 11 U.S.C. § 1325(a)(3), (4), (6) & (b), provide some protection against abuse. Additionally, in the event the debtor were to dismiss her

case after the creditor released its lien, the creditor's lien rights would be restored pursuant to § 349(b)(1)(C), and the creditor would again have a security interest in the car, albeit unperfected. State law might allow reperfection at that point. If the car were sold or pledged before the creditor could act on its security, it still could exercise its rights on default, and it would have received the value of the collateral. The court noted that conversion to chapter 7 does not revive liens, *see* 11 U.S.C. § 348(a); however, the creditor would be in no worse shape than if the debtor had never filed bankruptcy because, again, the creditor would have received the approximate value of the collateral. *Murry–Hudson*, 147 B.R. at 963.

The bank argues that requiring it to release its lien this late in the game is inequitable. In a different, yet somewhat analogous case, the court in *In re Taylor*, 208 B.R. 828 (Bankr.E.D.Pa.1997), held that chapter 13 debtors were equitably estopped from modifying their plan. The debtors moved to modify their second confirmed plan from a cure plan to a payoff plan approximately four years into their five year plan. The court considered the parties' negotiations with each other during the history of the plan. The second plan was a negotiated compromise between the debtors and the mortgagee at a time when the debtors were faced with default. *Id.* at 833. The debtors attempted to alter the treatment accorded to secured creditors under the second plan and to retroactively credit all payments tendered under the second plan in a different fashion. The court determined that it would be inequitable to allow the debtors, for a second time, to completely change their course in the treatment of the mortgagee approximately one year prior to the plan running its five-year course. *Id.* at 834. The parties in this case have negotiated throughout the pendency of the plan, and the plan has been revised and amended as a result. The bank has always expected to be paid 100%, and the debtors never attempted to modify the bank's lien rights until now.

The history of this case is not like that of *Nicewonger*, relied on by the debtors, or like *Murry–Hudson*. The *Nicewonger* decision arose in the context of an objection to confirmation, at the beginning of the case, not the

end. That plan was clear in its expectation that the creditor would release its rights in the collateral after payment of the secured portion of its claim. Similarly, the plan in *Murry–Hudson* provided that secured creditors would retain their liens "until their allowed secured claims have been paid." In this case, that expectation is not quite so clear in the plan, and it comes up only a few months before the plan must be completed on October 19, 1997.

The creditor has expected almost from the beginning to be paid 100%; if the case is dismissed or converted after its lien is released, it probably would not be. Indeed, since refinancing to complete the plan (reportedly imminent) would certainly pay the bank in full, the debtors' insistence on a release before payment means a dismissal or conversion may very well be on the horizon. It would not be fair to deprive the creditor of its security at this late date, nor would it be fair to reward the debtor for failing to complete the plan.

The bank's objection to the form of the order determining the amount of its unsecured claim is sustained. Accordingly, the order determining the bank's claim will not include a requirement that the bank release its security, notwithstanding payment of its secured claim.